No. 14-1173

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

———————————————

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE,

V.

ANDRE J. TWITTY,
DEFENDANT-APPELLANT.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
HONORABLE R. BROOKE JACKSON
D.C. NO. 13-CR-00076-RBJ

———————————————

ANSWERING BRIEF OF THE UNITED STATES
———————————————

JOHN F. WALSH                          J. BISHOP GREWELL
United States Attorney            Assistant U.S. Attorney
                                  1225 17th Street, Suite 700
                                      Denver, CO 80202
                                  Telephone: (303) 454-0100

                                   Attorneys for Appellee

ORAL ARGUMENT IS NOT REQUESTED

# TABLE OF CONTENTS

Table of Contents ........................................................................ i

Table of Authorities .................................................................. iii

Statement of Related Cases .................................................... vi

Statement of Jurisdiction ........................................................ vi

Statement of the Issues .......................................................... 1

Statement of the Case ............................................................ 1

    I.  Twitty mails a threatening letter to a federal judge
        in the District of Connecticut. .................................... 2

   II. Twitty mails a threatening letter to a U.S.
        Attorney's Office in Georgia. ...................................... 5

Summary of Argument .......................................................... 9

Argument ............................................................................... 10

    I.  Sufficient evidence established that Twitty mailed
        threatening communications in violation of 18
        U.S.C. § 876(c). ........................................................ 10

        A.  Both Twitty's sufficiency challenge and his First
            Amendment challenge turn on whether his
            letters contained true threats. ............................ 13

        B.  The letter to Judge Dorsey contained true
            threats. ................................................................ 15

        C.  The letter to the U.S. Attorney for the Northern
            District of Georgia contained true threats. ......... 18

        D.  The letters contained more than the mere
            advocacy of violence. ........................................... 20

E.  It is irrelevant here whether § 876 requires
subjective intent to threaten......................................21

II. The prosecutor's mention of Timothy McVeigh in
closing argument was not plainly erroneous.........................23

Conclusion ..........................................................27

Certificate of Compliance ...................................28

Certificate of Service......................................29

Certificate of Digital Submission ..........................30

Tenth Circuit Rule 28.2(b) Attachment .............................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brandenburg v. Ohio,*
  395 U.S. 444 (1969)...........................................................................20

*Neder v. United States,*
  527 U.S. 1 (1999)..............................................................................23

*Nielander v. Board of County Comm'rs,*
  582  F.3d 1155 (10th Cir. 2009)................................................14, 16

*United States v. Baldwin,*
  745 F.3d 1027 (10th Cir. 2014).......................................................24

*United States v. Cooper,*
  654 F.3d 1104 (10th Cir. 2011).......................................................11

*United States v. Davis,*
  926 F.2d 969 (10th Cir. 1991)...................................................11, 13

*United States v. De La Fuente,*
  353 F.3d 766 (9th Cir. 2003)...........................................................12

*United States v. Fulmer,*
  108 F.3d 1486 (1st Cir. 1997) .........................................................26

*United States v. Gauvin,*
  173 F.3d 798 (10th Cir. 1999).........................................................24

*United States v. Hoskins,*
  654 F.3d 1086 (10th Cir. 2011).......................................................10

*United States v. Kieffer,*
  681 F.3d 1143 (10th Cir. 2012).......................................................11

*United States v. Magleby,*
　　420 F.3d 1136 (10th Cir. 2005).......................................22

*United States v. McVeigh,*
　　918 F. Supp. 1467 (W.D. Okl. 1996)...............................25

*United States v. Stewart,*
　　411 F.3d 825 (7th Cir. 2005)..........................................12

*United States v. Viefhaus,*
　　168 F.3d 392 (10th Cir. 1999)...................................14, 23

*United States v. Wise,*
　　221 F.3d 140 (5th Cir. 2000)..........................................27

*United States v. Wolff,*
　　370 Fed. Appx. 888 (10th Cir. 2010) (unpublished) ......................16

*Virginia v. Black,*
　　538 U.S. 343 (2003).......................................13, 14, 20, 22

*Watts v. United States,*
　　394 U.S. 705 (1969).......................................................14

## DOCKETED CASES

*Elonis v. United States,*
　　Supreme Court Docket No. 13-983 ...............................22

## FEDERAL STATUTES

18 U.S.C. § 875...............................................................21

18 U.S.C. § 876(c)....................................................*passim*

18 U.S.C. § 1114.............................................................12

iv

18 U.S.C. § 3231.............................................................iv

28 U.S.C. § 1291.............................................................iv

# STATEMENT OF RELATED CASES

Andre Twitty filed a previous appeal in this case, which was dismissed for lack of jurisdiction.  See Tenth Circuit case #13-1345.

# STATEMENT OF JURISDICTION

The district court had jurisdiction here under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.  Final judgment was entered on May 15, 2014.  ROA IV at 82.[1]  Twitty filed a letter on May 1, 2014, which was construed as a premature notice of appeal.  *Id.* at 3, 78.  That notice of appeal ripened when final judgment was entered.  F.R.A.P. 4(b)(2).

---

[1] "ROA IV at 82" refers to Volume IV, Record on Appeal, at page 82.  "Supp. ROA I" refers to the supplemental record filed by the United States.

## STATEMENT OF THE ISSUES

1.   Was sufficient evidence presented that Twitty
     caused letters containing true threats to be mailed
     in violation of 18 U.S.C. § 876(c)?

2.   Was it plainly erroneous to reference Timothy
     McVeigh during closing arguments?

## STATEMENT OF THE CASE

In 2011, Andre Twitty sent threatening letters to federal judge

Peter Dorsey in Connecticut, a U.S. Attorney's Office in Georgia, and

others.  Twitty had been convicted for making bomb threats and

threatening federal law-enforcement in the 1990s.  ROA VI at 301-

02, 308.  Judge Dorsey had denied eight motions by Twitty seeking

habeas relief from the earlier convictions.  *Id.* at 207, 264, 267-73.

Based on his letters, a grand jury indicted Twitty for mailing

threatening communications in violation of 18 U.S.C. § 876(c).  ROA

I at 25-33.  He was found guilty of counts one and two, but acquitted

of count three.[2]  ROA IV at 82, ROA VI at 555.

Twitty admitted to a U.S. marshal that he wrote and mailed

the letters underlying counts one and two.  ROA VI at 156-157.  He

---

[2] Counts four and five were bifurcated from trial and later
dismissed.  ROA II at 224, ROA VI at 57, ROA IV at 82.

1

was upset with Judge Dorsey's handling of his habeas case. *Id.* at 159-60. And he felt that the U.S. Attorney's Office in the Northern District of Georgia lied to convict him. *Id.* at 159.

But he told the marshal that the letters reflected freedom of speech and did not contain threats. *Id.* at 161-62. He acknowledged that people could infer a threat from the letters, however, and that "it may have been his intent to make people nervous." *Id.* at 163.

Court staff took the letter to Judge Dorsey as a threat to kill the judge. *Id.* at 265-66, 286-87. The U.S. Attorney's Office in Georgia took the letter to it as threatening AUSA David Leta, who had prosecuted Twitty for his earlier crimes. ROA VI at 229-31, 242-43, 299-303. Leta felt threatened by the letter. *Id.* at 404-05.

## I. Twitty mails a threatening letter to a federal judge in the District of Connecticut.

Count one addressed the letter to Judge Dorsey. ROA I at 25; ROA VI at 154, 206-07, 218, 264-65; ROA III at 450-52 (letter). In it, Twitty told Judge Dorsey that there were 27 months "left to play this game" and that he had the judge —along with the Second and Eleventh Circuits— on lock.

> Peter,
>
> NEVER think I have any respect for you, the Fucking
> Federal Judicial or the Bullshit U.S. Government. Now,
> as long as the LAW states what does it Regarding Rule
> 60(b)(4) then you and your Redneck staff can continue to
> issue this same Bullshit order all that you want.  There is
> only 27 mo[nth]s left to play this game.  And as long as I
> already have those WHITE Motherfuckers in the
> Eleventh Circuit on Lock, then I have you and the Second
> Circuit as well.

ROA III at 450; ROA VI at 175.

He then referenced a girl shot during the attack on

Congresswoman Gabrielle Giffords and Federal Judge John Roll in

Tucson, Arizona, which occurred a few weeks before Twitty's letter.

ROA VI at 228-29.  He mentioned blowing up day-care centers, too.

> It's 4:00 AM.  And I am thinking about the little 9 yr old
> girl that got shot in Tucson.  And No! I don't give a FUCK.
> The Point is, I was reminded of something Wayne Williams
> allegedly stated during the Atlanta child Murders.
>
> "How many 'niggers' can you stop from being born if you
> kill one little Black Boy?!!"
>
> So I was thinking the same about REDNECKS!!! How
> many crackers can you keep from being born if someone
> were to blow-up Daycare centers.  One can only wonder.

ROA III at 450; ROA VI at 175-76.

Twitty found judicial deaths amusing and thought that Judge Roll's death meant "one less federal dickhead." He added that he had a cache of weapons, along with ricin, and told Judge Dorsey to call the U.S. Marshals.

> Now back to Tucson. They made a big deal about Judge Roll being killed. Like who gives a Fuck. To paraphrase the Ku Klux Klan, Just one less federal dickhead to worry about. Remember when Circuit Judge Moody got Blown up back in the 80's. Funny as shit.
>
> . . . .
>
> Now go call the U.S. Marshals, like I give a FUCK. As long as I have those stolen Remington .700 and the McMillan TAC-.50 cal; (2) M-16 A2s with two M-32 grenade launchers with a crate of 40 MM "Hell Hound" shells and the Benelli Mossberg shotguns. Not to mention my trusty Colt .357 Python with the Teflon coated hollowpoint. All I need to do is steal a PDW 6 MM and I'm set. So Fuck the FBI, USM, and anyone else. And that ricin is still in a safe place.

ROA III at 451; ROA VI at 176, 178. (The government called experts to explain the dangers of ricin and to discuss the various guns in Twitty's letter. ROA VI at 248-50, 420-34.)

Justice would be Twitty's even if he had to die for it. Time was not a factor. He had no respect for the law.

So Justice will be mine even if I have to DIE to get it.  So
if you white Bastards think you ALL are going to lie on
me then try to use your Bullshit positions to cover up that
lie, you all are crazy as shit.  You all don't respect the law.
And neither do I, so let's just wait.  Time is not a factor.

ROA III at 451; ROA VI at 179.

Twitty then said that he was going to take down Judge Dorsey

and his friends in Atlanta, i.e. the Eleventh Circuit.  Both Judge

Dorsey and his friends in Atlanta were "fucked."

This is a Rule 60(b)(4) motherfucker.  You have no
discretion dumbass. Respond 12 Jan 2011.

Again! This doesn't mean shit. Your motherfucking
friends in Atlanta are fucked.  And you relied on their
Bullshit orders so now you are fucked, and I am taking
you down with them.  So we can play this game until your
punkass decides to follow the law.  Then I play mine.

ROA III at 452; ROA VI at 181.

On the envelope, Twitty commented, "Bad Rulings and cover-

ups are crimes!! I believe Judge Roll understands that now!"  Supp.

ROA at 1.

## II.  Twitty mails a threatening letter to a U.S. Attorney's Office in Georgia.

Around the same time, Twitty sent a letter to the U.S. Attorney

for the Northern District of Georgia, which formed the second count

against him.  ROA I at 26-27; ROA VI at 155, 226-27.  While the envelope addressed the U.S. Attorney, the salutation was directed to Attorney General Eric Holder.  ROA III at 454.  In it, Twitty again refers to the slaying of Judge Roll, which he says "should happen to a lot more federal bastards" including the Supreme Court, Eleventh Circuit, district court judges, and AUSA David Leta.

> In light of former Federal Judge John Roll getting his punk ass brains blown the fuck out! Which in my 'opinion' should happen to a lot more federal bastards.  Starting with the punkass Supreme Court Bastards, then flow down to the Eleventh Circuit bitch ass Judges then over to the federal punks in the district court.  Then of course, I would love to see 'someone' take a McMillian TAC-50 with some M107 API and Blow AUSA David M Leta motherfucking head off. And of course, we cannot forget about those FBI lying motherfuckers. . .  I am praying for the day when 'somebody' locks-n-load an M82A3 or M2 lite .50 cal on those bastards and blows their fucking brains out.  That is my wish.

ROA III at 454; ROA VI at 185-86.

He then accuses the Eleventh Circuit of a criminal cover-up, says "FUCK the law," and shares his hatred of those in government.

> Now, a review of the 11th Cir. Bitch ass fraudulent order No. 10-15128 – 24Nov2010.  They are still trying to protect Leta, Monkey-ass and themselves.  They now

claim that a presumption does not violate the due process clause. Is that right? That is not what there own goddamn law states. Attached copies 11th – S.Ct. So this is a criminal cover-up. And you all are mandated to obey the law. Instead, you all conspire to cover up federal crimes, perjury in the Grand Jury by Federal bastards is a crime.

So since you all are not going to obey the law. Then FUCK the law. You know, I have been doing some real hard thinking about my upmost HATRED of Rednecks, Niggers, and Wetbacks as well as Homos and the rest of the other disgusting bastards in your government.

ROA III at 454; ROA VI at 186-87.

Twitty describes "dreams" where he tortures and kills AUSA Leta and Judge Forrester. (Judge Forrester presided over Twitty's trial and sentencing. *Id.* at 301-02.). But he puts "dreams" in quotes and draws smiley faces next to it.[3]

Then I started having these "DREAMS" where I am tying "Leta" over a table and taking a can of gasoline and pouring it all over his white ass and setting the motherfucker on fire. He screams while I stand there laughing. And Forrester, Lazarus, Morrison, are all tied up watching because they know they are next. Then the 'DREAM' switches. Now "Leta" is staked to the ground

---

[3] Twitty identified the symbols as smiley faces during trial. Compare ROA VI at 188-189 with ROA III at 455.

with his extra crispy ass mumbling.  And I take this "AX" and start cutting the motherfucker into tiny pieces.  And in another 'DREAM' I was walking down Northside Drive. And I went into this House and Found Leta duct-taped to a chair, he and Forrester.  And I took this Benelli Pump shot-gun and blew his head off.  And the 'DREAM' was so vivid that I could actually see and smell the motherfuckers blood on me.  Then I shot Forrester in his nuts.  Then put the barrel to his left eye and BAM Brains just blew against the wall. Then I wake up laughing.

THAT'S CALL PURE HATRED!!!!!!!

ROA III at 455; ROA VI at 188-89.

Twitty closed his letter by stating that he would keep his mind on an AUSA shot in 2003, the employees walking into federal buildings all over the country each day, and AUSA Leta.  And he explained that once he gets justice he will go to his secret place and commit suicide to deny the government of "any get back."  He also added a post-script: "Day care centers.  Hmmmm."

No one lies on me. No one. Especially not some Federal Bastard.  So, you all continue to lie and cover-up.  And I will keep my mind on that dead fuck nigga AUSA they found shot to death in 2003 in that ditch in Pennsylvania. And all of the Federal Bldgs and employees that walk in and out those doors all over this Bullshit country. Yeah, I will just put my mind on that.  And I will think everyday how Leta really thinks he is going to get away with this

8

lie.  Then once I get Justice it will be time to go to my
secret place and commit suicide depriving you punks of
any get back.  Because no one lies on me. No one.
Presumably, just keep that in mind.

P.S. Day care centers.  Hmmmm.

ROA III at 455; ROA VI at 189-90.

After the jury found that the two letters contained true threats
and returned guilty verdicts, Twitty was sentenced to 60 months on
Count I with 108 months concurrent on Count II.  ROA IV at 82-84.

## SUMMARY OF ARGUMENT

Taken as a whole, each of Twitty's letters contained true
threats.  They reflected his declared intention of inflicting pain and
loss on a federal judge, an AUSA, and other judges and law-
enforcement officials.  They went beyond mere advocacy of violence.
Because the First Amendment does not protect the making of true
threats and sufficient evidence established that the letters contained
true threats, Twitty's convictions should be affirmed.

The prosecution did not commit plain error when it referred to
Timothy McVeigh during closing argument.  As one witness testified,
Twitty's reference to day-care centers (and employees in federal
buildings) evoked the Oklahoma City bombing.  The prosecutor's

comment fairly characterized the threat that Twitty wanted his readers to contemplate. Twitty was not unduly prejudiced by the reference, which was based on testimony to which he did not object.

## ARGUMENT

### I. Sufficient evidence established that Twitty mailed threatening communications in violation of 18 U.S.C. § 876(c).

**Issue raised and ruled upon:** In a motion to dismiss, Twitty argued that his letters did not contain true threats and were protected by the First Amendment. ROA I at 113-29; ROA II at 247-56. He also moved for a judgment of acquittal at the end of the government's case, arguing that the government failed to prove any true threats. ROA VI at 440. The court denied his motion and ruled that the letters' content was sufficient for a jury to find that threats had been made. *Id.* at 441-43, 485.

**Standard of review:** Sufficiency of the evidence is reviewed de novo. *United States v. Hoskins*, 654 F.3d 1086, 1090 (10th Cir. 2011). The evidence is weighed in the light most favorable to the government. *Id.* This Court does not second-guess factual determinations made by the fact-finder or consider conflicting

evidence.  *Id.*  It does not judge witness credibility.  *United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011).

The Court asks whether "any rational trier of fact could have found the defendant guilty beyond a reasonable doubt" based on the evidence and the reasonable inferences drawn from it.  *Id.*  The evidence and inferences "must be substantial," but need not "exclude every other reasonable hypothesis" or "negate all possibilities except guilt."  *United States v. Kieffer*, 681 F.3d 1143, 1152 (10th Cir. 2012).

**Argument:**  The statute governing the mailing of threatening communications provides in relevant part:

> Whoever knowingly [deposits in any post office or authorized depository for mail matter] or causes to be delivered [by the Postal Service] any communication ... addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both.  If such a communication is addressed to a United States judge, a Federal law enforcement officer, or an official who is covered by section 1114, the individual shall be fined under this title, imprisoned not more than ten years, or both.

18 U.S.C. § 876(a) & (c); see also *United States v. Davis*, 926 F.2d 969, 970-71 (10th Cir. 1991).

The district court identified two elements to the offense:

First, the defendant knowingly deposited in the mail or knowingly caused to be delivered by the Postal Service according to the directions thereon, addressed to any person, a threat as charged.

And second, the nature of the threat was to injure any person.

ROA VI at 510; see also *id.* at 511-512.[4] *Accord United States v. Stewart*, 411 F.3d 825, 827-28 (7th Cir. 2005) ("there are two essential elements to prove a violation of 18 U.S.C. § 876 . . . (1) that the defendant wrote a letter addressed to a certain person containing a threat to injure the person of the addressee or of another, [and] (2) that the defendant knowingly caused the letter to be forwarded by the United States mail."); *United States v. De La Fuente*, 353 F.3d 766, 770 (9th Cir. 2003) ("The two elements of the crime of mailing a threat to injure are that (1) the defendant's letter contained a threat to injure and (2) that the defendant knowingly caused the

---

[4] The instruction for count two added that the letter must be addressed to a federal law-enforcement officer or an official covered by 18 U.S.C. § 1114. ROA VI at 511-512. That additional element increases the statutory maximum from five years to ten under 18 U.S.C. § 876(c). Twitty does not challenge that Attorney General Holder and AUSA Leta are federal law-enforcement officers.

threatening letter to be deposited in the mail.").  Twitty did not
challenge the district court's instructions below, nor does he
challenge them now.

Twitty makes a cursory challenge to whether he knowingly
caused the letters to be delivered by mail.  He points out that the
Bureau of Prisons reviews his mail and so, as a federal prisoner, he
could not directly send the letters and had no control of them once he
gave them to the Bureau.  Br. at 14-15 (citing ROA VI at 447-48, 461-
62).  But he provided the letters for mailing and the Bureau of
Prisons sent them.  ROA VI at 454, 456-61.  That is enough to
knowingly cause letters to be delivered by mail.  *See Davis*, 926 F.2d
at 971 (sufficient where others mail letters at defendant's request).

Twitty's primary challenge is to whether his letters contained
true threats to injure any person.

> **A.** **Both Twitty's sufficiency challenge and his First
> Amendment challenge turn on whether his
> letters contained true threats.**

Both Twitty's sufficiency challenge and his First Amendment
challenge turn on whether his letters contain true threats.  The First
Amendment's protections "are not absolute."  *Virginia v. Black*, 538

U.S. 343, 358 (2003). While the First Amendment protects free speech, it does not protect "true threats." *Watts v. United States*, 394 U.S. 705, 707-08 (1969); *Black*, 538 at 359-60. True threats are "distinguished from what is constitutionally protected speech." *Watts*, 394 U.S. at 707.

A true threat means a "serious threat as distinguished from words as mere political argument, idle talk or jest." *United States v. Viefhaus*, 168 F.3d 392, 395 (10th Cir. 1999). A threat includes any "declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another." *Id.* The government does not have to show "that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat." *Id.* at 395-96. What matters is "whether those who hear or read the threat reasonably consider that an actual threat has been made." *Id.* at 396.

Whether a statement qualifies as a true threat is a question for the jury. *Id.* at 397. It is a "fact-intensive inquiry" where the language of the threat, its context, and recipients' responses to the threat are all relevant. *Nielander v. Board of County Comm'rs*, 582

F.3d 1155, 1167-68 (10th Cir. 2009). (The district court's jury

instructions reflected the same. ROA VI at 511-13.)

If sufficient evidence of true threats is found in Twitty's letters,

then his First Amendment claim fails along with his sufficiency

challenge. His arguments that (a) his indictment should have been

dismissed, (b) the government lacked probable cause to arrest him,

and (c) the government misled the grand jury, also turn on whether

his letters contained true threats.

## B. The letter to Judge Dorsey contained true threats.

Sufficient evidence established that Twitty's letter to Judge

Dorsey contained true threats.

The letter stated Twitty's declared goal and intention of

inflicting punishment, loss, or pain on Judge Dorsey and the

Eleventh Circuit. He writes that Judge Dorsey and the Eleventh

Circuit judges "are fucked" and that he is going to take down Judge

Dorsey and his friends in Atlanta. This comment follows discussion

of blowing up daycare centers, the assassination of Judge Roll, and

Twitty's lack of respect for the law. It also must be interpreted in

light of his statements that there are only 27 months left to play the

game and that Judge Dorsey should call the U.S. Marshals because of Twitty's arsenal of weapons (described in detail) and his access to ricin.

On the outside of the envelope, Twitty writes that bad rulings and cover-ups are criminal and that he believes "Judge Roll understands that now!" On the inside, he applauds the killing of Judge Roll as "one less federal dickhead to worry about" and accuses Judge Dorsey of issuing the "same Bullshit order" and using his "Bullshit position[] to cover up that lie." The implication is that Twitty will kill Judge Dorsey for the same reason that Judge Roll was killed: bad rulings and cover-ups.

He has Judge Dorsey and the Eleventh Circuit on "lock."

That the court staff considered Twitty's language threatening further supports the jury's verdict. *Nielander*, 582 F.3d at 1168 (recipients' responses to letters are relevant to threat analysis); *see also United States v. Wolff*, 370 Fed. Appx. 888, 893 (10th Cir. 2010) (unpublished) (witnesses' testimony that letters constituted threats provided sufficient evidence combined with letters themselves).

Twitty argues that the investigating officer suggested the letter to Judge Dorsey contained no threats.  Br. at 18, 20 (citing ROA VI at 28, 174-76, 178-79).[5]  But the officer was testifying that individual paragraphs taken on their own did not constitute threats.  When the same paragraphs were taken together, he explained that the letter did constitute a threat to kill Judge Dorsey and others.  ROA VI at 206-08.  Twitty similarly cherry-picks testimony from Maria Corriette, but ignores her testimony that the letter as a whole expressed an intent to injure Judge Dorsey.  Compare Br. at 25 (citing ROA VI at 274-75) with ROA VI at 275 ("Q And does any part of the letter express an intention on my part to injure Judge Dorsey? A Yes, I believe the entire letter does.")

Even if the witnesses thought that the letter was not threatening, the jury could reach the opposite conclusion based on the letter itself.  The letter was introduced as a trial exhibit and

---

[5] Twitty's citation to ROA VI at 28 is from the hearing on Twitty's motion to dismiss on First Amendment grounds, so it does not go to the sufficiency of the evidence at trial.  In any event, the officer also testified during that hearing that the letter as a whole threatened Judge Dorsey's life.  ROA VI at 38.

provided sufficient evidence for the jury to reach the factual

conclusion that it conveyed a threat to injure Judge Dorsey.

**C.     The letter to the U.S. Attorney for the Northern District of Georgia contained true threats.**

The letter that Twitty sent to the United States Attorney in

Georgia also contained sufficient evidence of true threats.  While the

letter did not contain any direct threat to its addressee, it did contain

a "threat to injure the person . . . *of another*."  18 U.S.C. § 876(c)

(emphasis added).

Taken as a whole, the letter threatened AUSA Leta and others.

Twitty said that the killing of Judge Roll "should happen to a lot

more federal bastards," including the Supreme Court, Eleventh

Circuit, and district court judges.  He then states that he would love

to see someone blow off AUSA Leta's head and that the courts are

not obeying the law, so fuck the law.  He talks of hatred for those in

government leading him to dreams about torturing and killing Leta,

Judge Forrester, and others.  He puts "dreams" in quotation marks

along with a smiley face to indicate that he doesn't really mean

dreams, but rather is threatening those he has mentioned.

After describing a "dream" in which he shoots off Leta's head, Twitty closes the letter by saying that he will keep his mind on an AUSA who was shot to death in 2003 and on AUSA Leta thinking he is going to get away with a lie. He then explains that he will get justice before committing suicide to prevent "any get back" by the federal officers to whom the letter is written (i.e. "you punks.")

Even if Twitty's letter suggested that he truly meant dreams, his final paragraph about the shot AUSA, Leta thinking he will get away with a lie, and Twitty promising to get justice before killing himself to avoid "any get back" is evidence of a threat on its own.

Twitty again refers to testimony from the investigating officer that there were no threats in the letter. Br. at 20 (citing ROA VI at 187-88). But once again the officer explained that the letter as a whole contained threats to kill AUSA Leta and others. ROA VI at 208-09. And like the letter to Judge Dorsey, the second letter was introduced into evidence, providing sufficient evidence for the jury to decide that the letter contained threats regardless of the officer's testimony.

### D. The letters contained more than the mere advocacy of violence.

Twitty tries to argue that he cannot be convicted under § 876, because his letters merely advocated violence and nothing more. Br. at 22-23. He is correct that he cannot be prosecuted for mere advocacy of violence absent special circumstances. It violates constitutional free speech to "forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Black*, 538 U.S. at 359 (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).

But as explained above, Twitty's letters went beyond advocating violence: they included threats to the well-being of Judge Dorsey, AUSA Leta, and others. By citing only to testimony about specific passages in the letters that support his position, Twitty ignores testimony from the same witnesses about the messages as a whole. Just because the letters *also* advocated violence does not mean that they did not contain true threats.

The court instructed the jurors that they could not convict Twitty for mere advocacy of violence. It told them that they had to

decide whether Twitty's letters were true threats or merely advocating violence:

> Mere advocacy of the use of force or violence does not remove speech from the protection of the First Amendment. . . .
>
> But true threat is not protected by the First Amendment. The Constitution does not protect violence or true threats to injure others by the use of violence. The jury must decide in this case whether the statements contained in the three communications that are the subjects of the three counts in this case constituted mere advocacy of the use of force or violence on the one hand or true threats as defined in instructions 9 and 10 on the other hand.

ROA VI at 512-13.

There was sufficient evidence for the jury to find, as it did, that the letters to Judge Dorsey and the U.S. Attorney's Office were true threats. The jury took its duty seriously. On count three, where the jury concluded that the required elements of the offense were not met, it acquitted Twitty. But where it found true threats on counts one and two, it convicted him.

> **E.  It is irrelevant here whether § 876 requires subjective intent to threaten.**

Twitty notes that the Supreme Court has granted cert on the question of whether 18 U.S.C. § 875 requires subjective intent to

threaten.  Br. at 17 (citing *Elonis v. United States*, Supreme Court Docket No. 13-983).  The decision in that case may illuminate whether subjective intent is required for an § 876 prosecution as well.  This Court has already suggested that § 876 requires subjective intent.

> The threat must be made "with the intent of placing the victim in fear of bodily harm or death." An intent to threaten is enough; the further intent to carry out the threat is unnecessary.

*United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005) (quoting and citing *Black*, 538 U.S. at 359-60).  But it is irrelevant to this case whether § 876 requires subjective intent.

First, Twitty has not challenged the jury instructions on appeal or below for failing to include subjective intent as an element of the crime.  Therefore, he has waived any challenge to whether the instructions properly included all of the elements of the offense.

Second, he did not advocate below or on appeal that insufficient evidence of subjective intent was provided.  Instead, he argues that (1) there is insufficient evidence of intent to actually do harm and (2) there is insufficient evidence of an expressed intent to injure.  The

former is not required for an § 876 prosecution (*Viefhaus*, 168 F.3d at 395-96), however, and the trial record amply established evidence of the latter (see above).

Even if Twitty had preserved his claims about subjective intent, those claims would fail. The evidence showed that Twitty had a subjective intent to threaten. *Neder v. United States*, 527 U.S. 1, 17-19 (1999) (harmless error where jury verdict would have been the same); *id.* at 35 (Scalia, J. concurring in part, dissenting in part) ("Where the facts necessarily found by the jury . . . support the existence of the element omitted or misdescribed in the instruction, the omission or misdescription is harmless.") That he wrote threatening letters and then caused those letters to be mailed is evidence of his subjective intent to threaten. And he admitted that it may have been his intent to make people nervous. ROA VI at 163.

## II. The prosecutor's mention of Timothy McVeigh in closing argument was not plainly erroneous.

**Issue raised and ruled upon:** Twitty did not object when the prosecution referred to Timothy McVeigh during its closing argument. ROA VI at 529.

**Standard of review:** Because Twitty did not object, the prosecution's remarks during closing argument are reviewed for plain error, so this Court will reverse "only to correct particularly egregious errors." *United States v. Gauvin*, 173 F.3d 798, 804 (10th Cir. 1999) (citation omitted). Plain error requires that substantial rights were affected. *United States v. Baldwin*, 745 F.3d 1027, 1034 (10th Cir. 2014).

**Argument:** During closing argument, the prosecution referred to testimony from the person in charge of security for the U.S. Attorney's Office in Georgia. She had testified that Twitty's letter brought to mind the Oklahoma City bombing.

> Charysse Alexander walks in and out, like the defendant said, of these federal buildings every day. David Leta walks into these federal buildings every day . . . And then [Twitty] concludes by day care centers, hmm, and who wouldn't, who walks into these buildings every day, not think as Charysse Alexander thought about those poor children and all these federal employees blown up by Timothy McVeigh in Oklahoma City.

ROA VI at 529.

Twitty argues that the reference to Timothy McVeigh and the Oklahoma City bombing violated his Sixth Amendment Rights by

inflaming the jury and creating undue prejudice.  Br. at 33.  He notes

that his letters did not reference either McVeigh or Oklahoma City.

But it was the images that Twitty's letters were meant to invoke that

brought to mind Timothy McVeigh and Oklahoma City — not the

prosecutor's argument.

The reference to McVeigh was a fair comment on Ms.

Alexander's testimony.  She was in charge of handling threats for the

U.S. Attorney's Office and she had the duty of assessing the risk

from Twitty's letter.  ROA VI at 225, 228.  She said that she

"immediately took" Twitty's reference to day-care centers "to be a

reference to the Oklahoma City bombing where children had been

killed in the day care center in that building."  ROA VI at 230.  Her

reaction is not surprising.

While Twitty never named McVeigh in his letters, he invoked

McVeigh as directly as one can without saying his name.  Twitty

referenced the people entering federal buildings every day and

blowing up day-care centers.  Part of the iconography of Timothy

McVeigh and the bombing of the Oklahoma City federal building is

that children in the day-care center were victims.  *United States v.*

*McVeigh*, 918 F.Supp. 1467, 1471-72 (W.D. Okl. 1996) (discussing national media coverage of people calling McVeigh a "baby killer" and how "tragic sense" of event was "heightened by the deaths of infants and very young children in the day care center").[6]  That makes his case different from *United States v. Fulmer*, 108 F.3d 1486, 1497-98 (1st Cir. 1997), where Fulmer was prosecuted for a threat that made no reference to the use of bombs or any other part of the indelible images of Oklahoma City.  By sending letters to federal employees that reference violence, employees walking in and out of federal buildings every day, blowing up day-care centers, and getting justice, Twitty was the one who raised Timothy McVeigh.

It was not error to reference witness testimony about the imagery and fear that Twitty's letters brought to mind.  It was relevant to the threatening nature of the letters.  That may be why Twitty never objected to the testimony when it was introduced at trial.  ROA VI at 230.

---

[6] The photograph of an infant victim carried by a firefighter from the Oklahoma City federal building won a Pulitzer Prize that year. See http://www.pulitzer.org/citation/1996-Spot-News-Photography and http://www.pulitzer.org/works/1996-Spot-News-Photography.

Nor did the prosecutor's comment violate Twitty's substantial rights. The comment only appeared once and paled in comparison to the emotionally-charged nature of the profane statements included in Twitty's letters. The prosecutor did not try to compare Twitty to McVeigh or suggest his crime was along the lines of McVeigh's. And the court instructed the jurors that they must decide the case only on the evidence, which did not include the arguments made by the government or defense. ROA VI at 498; *see also United States v. Wise*, 221 F.3d 140, 152 (5th Cir. 2000) (reference to Oklahoma City bombing during closing argument did not affect substantial rights in light of evidence and instructions that argument is not evidence).

## CONCLUSION

Twitty's conviction should be affirmed.

DATED this 8th day of September, 2014.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

/s/ J. Bishop Grewell
J. BISHOP GREWELL
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I certify that the attached brief contains 5,592 words.

DATED:  September 8, 2014

/s/ J. Bishop Grewell

J. BISHOP GREWELL
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


/s/ J. Bishop Grewell

J. BISHOP GREWELL
Assistant United States Attorney

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing

      (1) all required privacy redactions have been made;

      (2) if required to file additional hard copies, that the ECF submission is anexact copy of those documents;

      (3) The digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, TREND MICRO Office Scan for Windows, Version 10.6.5372, Engine Version 9.750.1007, Virus Pattern File 11.135.00, dated 9/7/14 and according to the program are free of viruses.

*s/Dorothy Burwell*
U.S. Attorney's Office

# TENTH CIRCUIT RULE 28.2(b) ATTACHMENT

The following documents are attached to comply with Tenth

Circuit Rule 28.2(b):

    (A)   Final Judgment
           (May 15, 2014) (ROA IV at 82-92)

    (B)   Oral Ruling on Acquittal Motion
           (Feb. 20, 2014) (ROA VI at 441-43, 485)